JUDGE PAULEY

# 11 CIV 6231

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LOUISIANA MUNICIPAL POLICE
EMPLOYEES RETIREMENT SYSTEM,
Derivatively on Behalf of JPMORGAN CHASE
& CO.,

                                Plaintiff,

    vs.

JAMES DIMON, JAMES S. CROWN,
WILLIAM H. GRAY III, LABAN P.
JACKSON, JR., CRANDALL C. BOWLES,
LEE R. RAYMOND, ELLEN V. FUTTER,
DAVID C. NOVAK, WILLIAM C.
WELDON, STEPHEN B. BURKE, and
DAVID M. COTE,

                              Defendants.

   -and-

JPMORGAN CHASE & CO., a Delaware
corporation,

                      Nominal Defendant.

---

Civil Action No.

VERIFIED SHAREHOLDER
DERIVATIVE COMPLAINT

**DEMAND FOR JURY TRIAL**



RECEIVED
SEP 06 2011
U.S.D.C. S.D. N.Y.
CASHIERS

**OVERVIEW OF ACTION**

1.     This is a derivative action for breach of fiduciary duty and unjust enrichment brought by Plaintiff, Louisiana Municipal Police Employees Retirement System ("Plaintiff"), a shareholder in JPMorgan Chase & Co. ("JPMC" or "JPMorgan" or the "Company"), against the current directors of JPMC who knowingly allowed and rewarded the Company's violations of the U.S. Department of Treasury's Multiple Sanctions Programs between December 15, 2005 and March 1, 2011 (the "Relevant Period").

2.     Specifically, on August 25, 2011, JPMC settled with the U.S. Department of Treasury's the Office of Foreign Assets Control (the "OFAC") for $88.3 million for violations of the Cuban Assets Control Regulations ("CACR"), 31 C.F.R. part 515; the Weapons of Mass Destruction Proliferators Sanctions Regulations ("WMDPSR"), 31 C.F.R. part 544; Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters" ("Executive Order 13382"); the Global Terrorism Sanctions Regulations ("GTSR"), 31 C.F.R. part 594; the Iranian Transactions Regulations ("ITR"), 31 C.F.R. part 560; the Sudanese Sanctions Regulations ("SSR"), 31 C.F.R. part 538; the Former Liberian Regime of Charles Taylor Sanctions Regulations ("FLRCTSR"), 31 C.F.R. part 593; and the Reporting, Procedures and Penalties Regulations ("RPPR"), 31 C.F.R. part 501, that occurred between December 15, 2005, and March 1, 2011 (the "Relevant Period").

3.     The misconduct occurred, unchecked, under the Defendants' watch because of their complicity in the improprieties alleged herein. Because of its acquiescence in the schemes, JPMC's Board cannot be disinterested and independent. Accordingly, Plaintiff brings this action on behalf of the Company to, among other things, recover damages caused by the Individual Defendants' unlawful course of conduct and breaches of fiduciary duty. These damages

2

include, among other things; the costs to the Company associated with the settlement, remedial measures, damage to goodwill and increased regulatory scrutiny.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2), in that the Plaintiff and Defendants are citizens of different states and the matter in controversy exceeds $75,000.00, exclusive of interests and costs.

5.      This Court has jurisdiction over each defendant named herein.  Each defendant is either a corporation that conducts business, and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District, State, or the United States to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 a substantial portion of the transactions and wrongs complained of herein occurred here, and Defendants have received substantial compensation and other transfers of money in this District by doing business here and engaging in activities having an effect here.

## PARTIES

7.      Plaintiff Louisiana Municipal Police Employees Retirement System is a shareholder of JPMorgan and has held JPMorgan shares during the Relevant Period.  Plaintiff is a citizen of Louisiana.

8.      Nominal Defendant JPMorgan is a Delaware corporation and maintains its principal executive offices at 270 Park Avenue, New York, NY 10017.  JPMorgan provides global financial services and retail banking. The Company provides such as investment banking, treasury and security services, asset management, private banking, card member services,

3

commercial banking, and home finance. JPMorgan serves business enterprises, institutions, and individuals. The Company's shares are traded on New York Stock Exchange ("NYSE") under the symbol "JPM."

9.     Defendant James Dimon ("Dimon") became Chairman of the Board of Directors ("Board") on December 31, 2006, and has been Chief Executive Officer and President since December 31, 2005. Defendant Dimon is a citizen of Illinois.

10.     Defendant James S. Crown ("Crown") has served as a member of the Board since 2004. Defendant Crown is a citizen of Illinois.

11.     Defendant William H. Gray ("Gray") has served as a member of the Board since 2001. Defendant Gray is a citizen of Florida.

12.     Defendant Laban P. Jackson, Jr. ("Jackson") has served as a member of the Company's Board since 2004. Defendant Jackson is a citizen of Florida

13.     Defendant Crandall C. Bowles ("Bowles") has served as a member of the Company's Board since 2006. Defendant Bowles is a citizen of North Carolina.

14.     Defendant Lee R. Raymond ("Raymond") has served as a member of the Company's Board since 2001. Defendant Raymond is a citizen of Texas.

15.     Defendant Ellen V. Futter ("Futter") has served as a member of the Company's Board since 2001. Defendant Futter is a citizen of New York

16.     Defendant David C. Novak ("Novak") has served as a member of the Company's Board since 2004. Defendant Novak is a citizen of Kentucky.

17.     Defendant William C. Weldon ("Weldon") has served as a member of the Company's Board since 2005. Defendant Weldon is a citizen of Pennsylvania.

18.     Defendant Stephen B. Burke ("Burke") has served as a member of the Company's Board since 2004. Defendant Burke is a citizen of Pennsylvania.

19.     Defendant David M. Cote ("Cote") has served as a member of the Company's Board since 2007. Defendant Cote is a citizen of New Jersey.

20.     The Defendants referenced above are referred to herein as the "Individual Defendants" or "Director Defendants."

## SUBSTANTIVE ALLEGATIONS

21.     On August 25, 2011, the OFAC issued a press release announcing a settlement with JPMorgan where the Company agreed to remit $88.3 million "to settle potential civil liability for apparent violations" of CACR; WMDPSR; Executive Order 13382; GTSR; ITR; SSR; FLRCTSR; and RPPR. The press release stated the following, in relevant part:

> JPMorgan Chase Bank, N.A, New York, NY ("JPMC") has agreed to remit $88,300,000 to settle potential civil liability for apparent violations of: the Cuban Assets Control Regulations ("CACR"), 31 C.F.R. part 515; the Weapons of Mass Destruction Proliferators Sanctions Regulations ("WMDPSR"), 31 C.F.R. part 544; Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters;" the Global Terrorism Sanctions Regulations ("GTSR"), 31 C.F.R. part 594; the Iranian Transactions Regulations ("ITR"), 31 C.F.R. part 560; the Sudanese Sanctions Regulations ("SSR"), 31 C.F.R. part 538; the Former Liberian Regime of Charles Taylor Sanctions Regulations ("FLRCTSR"), 31 C.F.R. part 593; and the Reporting, Procedures, and Penalties Regulations ("RPPR"), 31 C.F.R. part 501, that occurred between December 15, 2005, and March 1, 2011.
>
> This settlement covers the following apparent violations of the CACR, WMDPSR, and RPPR, which OFAC has determined were egregious:
>
> JPMC processed 1,711 wire transfers totaling approximately $178.5 million between December 12, 2005, and March 31, 2006, involving Cuban persons in apparent violation of the CACR. In November 2005, another U.S. financial institution alerted JPMC that JPMC might be processing wire transfers involving a Cuban national through one of its correspondent accounts. After such notification, JPMC conducted an investigation into the wire transfers it had processed through the correspondent account. The results of this investigation were reported to JPMC management and supervisory personnel, confirming that transfers of funds in which Cuba or a Cuban national had an interest were being made through the correspondent account at JPMC. Nevertheless, the bank failed

5

to take adequate steps to prevent further transfers. JPMC did not voluntarily self-disclose these apparent violations of the CACR to OFAC. As a result of these apparent violations, considerable economic benefit was conferred to sanctioned persons. The base penalty for this set of apparent violations was $111,215,000.

On December 22, 2009, in apparent violation of the WMDPSR, JPMC made a trade loan valued at approximately $2.9 million to the bank issuer of a letter of credit in which the underlying transaction involved a vessel that had been identified as blocked pursuant to the WMDPSR due to its affiliation with the Islamic Republic of Iran Shipping Lines ("IRISL"). Although JPMC supervisors and managers determined that this trade loan was likely an apparent violation of the WMDPSR and, in late December 2009, decided to submit a voluntary self-disclosure to OFAC, JPMC did not mail its voluntary self-disclosure until March 2010, three days prior to the date on which JPMC received repayment for the loan without OFAC guidance or authorization. JPMC also failed to respond promptly and completely to an OFAC administrative subpoena seeking information on this transaction. OFAC determined that JPMC made a voluntary self-disclosure of this apparent violation. The base penalty for this apparent violation was $2,941,838.

The apparent violation of the RPPR occurred between November 8, 2010, and March 1, 2011. On October 13, 2010, OFAC issued JPMC an administrative subpoena pursuant to section 501.602 of the RPPR directing JPMC to provide certain specified documents related to a specific wire transfer referencing "Khartoum." In response to this subpoena and a subsequent communication, JPMC compliance management failed to produce several responsive documents in JPMC's possession, and repeatedly stated that JPMC had no additional responsive documents. OFAC ultimately provided JPMC with a list of multiple responsive documents that OFAC had reason to believe were in JPMC's possession based on communications with a third-party financial institution. This prompted JPMC to correct its prior statements that the bank possessed no additional responsive documents and to produce more than 20 responsive documents. JPMC did not voluntarily self-disclose the apparent violation of the RPPR to OFAC. The base penalty for this apparent violation was $250,000.

In reaching its determination that the above-referenced apparent violations were egregious because of reckless acts or omissions by JPMC, OFAC considered all of the information in its possession related to these apparent violations, as well as the General Factors Affecting Administrative Action set forth in OFAC's Economic Sanctions Enforcement Guidelines. OFAC determined that JPMC is a very large, commercially sophisticated financial institution, and that JPMC managers and supervisors acted with knowledge of the conduct constituting the apparent violations and recklessly failed to exercise a minimal degree of caution or care with respect to JPMC's U.S. sanctions obligations.

This settlement also covers the following apparent violations, which OFAC determined were not egregious:

6

Apparent violations of the ITR, GTSR, SSR, FLRCTSR, WMDPSR, and Executive Order 13382 arising out of its failure to appropriately block or reject nine wire transfers between April 27, 2006 and November 28, 2008, which totaled $609,308. JPMC voluntarily self-disclosed five of these apparent violations to OFAC.

Apparent violations of the WMDPSR and SSR in which JPMC advised and confirmed a $2,707,432 letter of credit on April 24, 2009, in which the underlying transaction involved a vessel identified by OFAC as blocked due to its affiliation with IRISL, and a $79,308 letter of credit on January 29, 2008, involving goods destined for Sudan. JPMC voluntarily self-disclosed these apparent violations to OFAC.

An apparent violation of the ITR consisting of a May 24, 2006 transfer of 32,000 ounces of gold bullion valued at approximately $20,560,000 to the benefit of a bank in Iran. JPMC did not voluntarily self-disclose this matter to OFAC.

OFAC mitigated the total potential penalty based on JPMC's substantial cooperation, including conducting an historical transaction review at OFAC's request and entering into tolling agreements with OFAC, and the fact that OFAC had not issued a Penalty Notice or Finding of Violation against JPMC in the five years preceding the transactions at issue. Mitigation was also extended because JPMC agreed to settle these apparent violations.

22.    The Company issued the following statement as a response to the OFAC:

The civil settlement resolves a number of OFAC allegations dating back to 2005, none of which involved any intent to violate OFAC regulations. These rare incidents were unrelated and isolated from each other. The firm screens hundreds of millions of transaction and customer records per day and annual error rates are a tiny fraction of a percent. We are pleased to have resolved these matters and to move forward with enhancements to our global OFAC compliance programs.

## DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

23.    Plaintiff is a current owner of JPMorgan common stock and was an owner of JPMorgan common stock during the period relevant to the Individual Defendants' wrongful course of conduct alleged herein.

24.    Plaintiff brings this action derivatively to redress injuries suffered, and to be suffered, by JPMorgan as a direct result of the breaches of fiduciary duty, gross mismanagement, waste of corporate assets, and unjust enrichment by the Individual Defendants. JPMorgan is named solely as a nominal defendant.

25.     Plaintiff has not made any demand upon JPMorgan to bring an action on behalf of JPMorgan asserting claims herein to recover damages for the injuries suffered by JPMorgan, since such demand would have been a futile, wasteful, and useless act, and is therefore excused, for the reasons stated herein.

26.     The Board currently consists of the following eleven individuals: Defendants Bowles, Burke, Cote, Crown, Dimon, Futter, Gray, Jackson, Novak, Raymond, and Weldon.

27.     Demand is futile because the particularized facts pleaded herein create a reasonable doubt that (1) the directors are disinterested and independent, or (2), that the challenged decision was the product of a valid exercise of business judgment.

28.     Together with all of the Individual Defendants, the present Board embraced or recklessly disregarded the Company-wide business strategy based upon repeated and systematic violations of Federal law, safety regulation and Company policy. This strategy was implemented over an extended period of time through multiple divisions of JPMorgan, was carried out at all levels of the Company, and was well-known to the Board and throughout the Company. By permitting these violations of law to continue for over a prolonged period after being put on notice numerous times, the Board utterly failed to exercise adequate oversight over JPMorgan, and thus face a substantial likelihood of liability for much of the conduct complained of herein.

29.     Defendant Dimon was a key executive at the Company during the Relevant Period. Demand is excused against Defendant Dimon because he knowingly authorized or recklessly disregarded such open and notorious unlawful policies and practices. Moreover, Defendant Dimon was grossly negligently in putting effective control systems in place. Further, as the top level executive at JPMorgan, Defendant Dimon necessarily played an active role in approving

the illegal transactions and transfers. Accordingly, Defendant Dimon breached his fiduciary duties of care and loyalty, and therefore, cannot impartially consider a demand.

30.     Further, by their wrongful acts, the Individual Defendants were unjustly enriched at the expense of and to the detriment of JPMorgan.  The Individual Defendants received compensation and/or director remuneration at the same time in which they were breaching their fiduciary duties owed to the Company. Any suit by the current directors of JPMorgan to remedy the wrongs complained of herein would expose the defendants themselves and their friends and business allies to significant personal liability for their breaches of fiduciary duties and other misconduct.

31.     Further, the unlawful acts and practices alleged herein cannot be defended by the Individual Defendants and are not subject to the protection of any independent business judgment as they were unlawful or improper and in turn, *ultra vires*. This action does not arise from a single incident, but multiple schemes spanning years that were common knowledge throughout the Company.  Serious violations of applicable law and regulations occurred systematically throughout the Company as a direct result of the Board's decision to embrace a policy of calculated legal violations as the Company's deliberate business strategy. There is no legitimate "business judgment" involved in devising or carrying out such an unlawful policy. The JPMorgan Board approved of or willfully disregarded the improper business strategy described herein. The approval of action by the Company that violates applicable law can never be protected by the business judgment rule. Nor can such malfeasance ever constitute the "good faith" required of corporate fiduciaries. Accordingly, demand on the Board is excused.

32.     Demand is excused because this action challenges decisions by the Board that are not protected by the business judgment rule. As stated by the OFAC, the "violations were

egregious because of reckless acts or omissions by JPMC." Moreover, "OFAC determined that JPMC is a very large, commercially sophisticated financial institution, and that JPMC managers and supervisors acted with knowledge of the conduct constituting the apparent violations and recklessly failed to exercise a minimal degree of caution or care with respect to JPMC's U.S. sanction obligations. Yet despite being fully apprised of these facts, as evidenced by JPMorgan's public acknowledgments of the violations, the Board chose not to take appropriate action to stamp out the illegal activity. Accordingly, demand is futile.

33. Demand is excused because all of the members of the Board are interested in the decision to investigate and prosecute claims relating to the Company's violations of the CACR; WMDPSR; Executive Order 13382; GTSR; ITR; SSR; FLRCTSR; and RPPR. All of the members of the Board served for at least part of the relevant period when the Board was aware of the violations at the Company, but chose to allow those activities to continue. Because the Board knew that JPMorgan employees were allowing illegal violations including wire transfers to continue. Because the entire Board is interested in this decision, demand is futile.

34. Demand is excused because all of the members of JPMorgan's Board face a substantial likelihood of liability from Plaintiff's claims and so are interested in the decision to assert them. All of the members of JPMorgan's Board served for at least part of the relevant period when the Board chose to allow JPMorgan employees to engage in the violations and recklessly disregarded manifest red flags that JPMorgan lacked adequate internal controls and was engaged in illegal activities. These allegations demonstrate that the Board breached its fiduciary duties of loyalty and good faith. As a result, all of the members of the Board are interested in the decision to prosecute the claims asserted by Plaintiff and demand is futile.

35.    Demand is also excused because the wrongs alleged herein constitute violations of the Company's internal policies and charters and cannot be considered a valid exercise of business judgment.

36.    The Individual Defendants' wrongful conduct was continuous and occurred both before and throughout the Relevant Period. It resulted in ongoing and continuous harm to the Company. The Individual Defendants participated in and/or failed to adequately address, correct and/or disclose such conduct.

37.    Demand is further excused because the Individual Defendants participated in, approved, ratified or permitted the illegal conduct described herein, and they cannot be expected to prosecute claims against themselves and/or persons or entities with which they have extensive inter-related business and professional and personal entanglements, including the other Individual Defendants, if Plaintiff demanded that they do so. The Individual Defendants cannot be expected to make a disinterested or independent decision with respect to a shareholder demand.

38.    Moreover, the acts complained of constitute violations of the fiduciary duties owed by JPMorgan's officers and directors and these acts are incapable of ratification.

39.    Despite the Individual Defendants having knowledge of the claims and causes of action raised by plaintiff, the current Board has failed and refused to seek to recover for JPMorgan for any of the wrongdoing alleged by plaintiff herein.

40.    Any suit by the current directors of JPMorgan to remedy these wrongs would likely expose the Individual Defendants and JPMorgan to further violations of federal laws that would result in civil actions being filed against one or more of the Individual Defendants, thus, they are

hopelessly conflicted in making any supposedly independent determination whether to sue themselves.

41.     JPMorgan has been and will continue to be exposed to significant losses due to the wrongdoing complained of herein, yet the Individual Defendants and current Board have not filed any lawsuits against themselves or others who were responsible for that wrongful conduct to attempt to recover for JPMorgan any part of the damages JPMorgan suffered and will suffer thereby.

42.     If the Company's officers and directors are protected against personal liability for their acts of mismanagement and breach of fiduciary duty alleged in this complaint by directors' and officers' liability insurance, they caused the Company to purchase that insurance for their protection with corporate funds, *i.e.,* monies belonging to the stockholders of JPMorgan. However, the directors' and officers' liability insurance policies covering the defendants in this case contain provisions that eliminate coverage for any action brought directly by JPMorgan against these defendants, known as the "insured versus insured exclusion." As a result, if these directors were to cause JPMorgan to sue them or certain of the officers of JPMorgan, there would be no directors' and officers' insurance protection and thus, this is a further reason why they will not bring such a suit. On the other hand, if the suit is brought derivatively, as this action is brought, such insurance coverage exists and will provide a basis for the Company to effectuate recovery. If there is no directors' and officers' liability insurance, then the current directors will not cause JPMorgan to sue the defendants named herein, since they will face a large uninsured liability and lose the ability to recover for the Company from the insurance.

43.     The Company has been directly and substantially injured by reason of the Individual Defendants' intentional breach and/or reckless disregard of their fiduciary duties

including the $88.3 million settlement by JPMorgan to the OFAC and money that JPMorgan is entitled to recover from its disloyal Board. Plaintiff, as a shareholder of the Company, seeks damages and other relief on behalf of JPMorgan, in amount to be proven at trial.

## DUTIES OF THE INDIVIDUAL DEFENDANTS

44.    Because of their positions as officers and/or directors of JPMorgan during the Relevant Period and their ability to control the business and corporate affairs of the Company, the Individual Defendants owed JPMorgan and its shareholders fiduciary obligations of good faith, loyalty, and candor, and were and are required to use their utmost ability to control and manage the Company in a fair, just, honest, and equitable manner. The Individual Defendants were and are required to act in furtherance of the best interests of JPMorgan and its shareholders so as to benefit all shareholders equally and not in furtherance of their personal interest or benefit. Each director and/or officer of the Company owes to JPMorgan and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, and the highest obligations of fair dealing.

45.    The Individual Defendants, because of their positions of control and authority as directors and/or officers of JPMorgan, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company. Due to their positions with JPMorgan, each of the Individual Defendants had knowledge of material non-public information regarding JPMorgan.

46.    To discharge their duties, the Individual Defendants were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the Company. By virtue of such duties, the officers and directors of JPMorgan were required to, among other things:

            a.    Exercise good faith to ensure that the affairs of the Company were

conducted in an efficient, business-like manner so as to make it possible to provide the highest quality performance of their business;

        b.      Exercise good faith to ensure that the Company was operated in a diligent, honest and prudent manner and complied with all applicable federal and state laws, rules, regulations and requirements, and all contractual obligations, including acting only within the scope of its legal authority; and

        c.      When put on notice of problems with the Company's business practices and operations, exercise good faith in taking appropriate action to correct the misconduct and prevent its recurrence.

       47.      Under the Company's Code of Conduct ("Code"), each member of the Board and JPMorgan's employees "are expected to conduct the firm's business ethically and in full compliance with both the letter and the spirit of laws and regulations, the Code, and any other policies and procedures that may be applicable to you." The Code emphasizes the following, in relevant part:

> **Anti-money laundering and sanctions**
> JPMorgan Chase has established policies, procedures and internal controls designed to assure compliance with laws and regulations regarding money laundering and terrorist financing, including relevant provisions of the Bank Secrecy Act (as amended by the USA PATRIOT Act) and economic sanctions imposed by the U.S. Office of Foreign Assets Control, and similar laws and regulations in other countries. You should be familiar with, and comply with, these policies, procedures and controls. You should also understand your obligations to:
>
> (a) know your customers and your customers' use of the firm's products and services.
>
> (b) get proper training if you are identified as being in a job that requires a higher degree of knowledge of anti-money laundering, counter-terrorist financing, and sanctions rules.
>
> (c) be alert to and report unusual or suspicious activity to the designated persons within your line of business or region, including your Compliance Officer or Risk Manager responsible for anti-money laundering and sanctions compliance.

14

48.     In addition, the Company's Code of Ethics ("Code of Ethics") applies to the Company's Chief Executive Officer, President, Chief Financial Officer, and Chief Accounting Officer and to all other professionals of the firm worldwide serving in a finance, corporate treasury, and tax or investor relations role.   The Code of Ethics provides the following, in relevant part:

> The purpose of this Code of Ethics is to promote honest and ethical conduct and compliance with the law, particularly as related to the maintenance of the firm's financial books and records and the preparation of its financial statements. The obligations of this Code of Ethics supplement, but do not replace, the firm's Code of Conduct.  As a finance professional of the firm, you are expected to:

> - Engage in and promote ethical conduct, including the ethical handling of actual or apparent conflicts of interest between personal and professional relationships, and to disclose to the Office of the Secretary any material transaction or relationship that reasonably could be expected to give rise to such a conflict.

> - Carry out your responsibilities honestly, in good faith and with integrity, due care and diligence, exercising at all times the best independent judgment.

> - Assist in the production of full, fair, accurate, timely and understandable disclosure in reports and documents that the firm and its subsidiaries file with, or submit to, the Securities and Exchange Commission and other regulators and in other public communications made by the firm.

> - Comply with applicable government laws, rules and regulations of federal, state and local governments and other appropriate regulatory agencies.

> - Promptly report (anonymously, if you wish to do so) to the Audit Committee of the Board of Directors any violation of this Code of Ethics or any other matters that would compromise the integrity of the firm's financial statements. You may contact the Audit Committee by mail, by phone, or by e-mail; contact information is set forth below.

> - Never to take, directly or indirectly, any action to coerce, manipulate, mislead or fraudulently influence the firm's independent auditors in the performance of their audit or review of the firm's financial statements.

49.     Similarly, JPMorgan's Corporate Governance Principles ("CGP") provides that the "Board (non-management directors only) makes an evaluation of the Chairman and the Chief Executive Officer at least annually."  Moreover, the CGP states that the "full Board shall engage

15

in discussions on strategic issues and ensure that there is sufficient time devoted to director interchange on these subjects."

50.   Moreover, the Company describes certain principles in detail as they "are so fundamental to" its success. The Company's Business Principles including, among others, the following:

Maintain a strong system of internal governance and controls

Good internal governance is essential to effective management. It ties together all our businesses worldwide with a common set of rules, expectations and oversight activities. These help safeguard our reputation, which we believe is one of our most important assets, and align the company's performance with the best interests of our shareholders.

***

Operate with the highest standards of integrity

In business, as in every other arena, ethical behavior does not just happen. It has to be cultivated and repeatedly affirmed throughout the organization. Maintaining the highest standards of integrity involves being honest and doing the right thing for our customers, fellow employees, our shareholders and all our other partners.

51.   The Audit Committee of the Board has additional responsibilities concerning compliance and regulatory oversight. The Audit Committee charter provides the following in relevant part:

The Audit Committee shall:

•   Receive from the General Auditor, periodically, and from management, as appropriate, communications and presentations on significant operating and control issues in internal audit reports, management letters, and regulatory authorities' examination reports, and on the initiation and status of significant special investigations; and initiate such other inquiries into the affairs of the corporation as it deems necessary or appropriate.

•   Receive periodic presentations from management and the independent registered public accounting firm on the identification and resolution status of material weaknesses and reportable conditions in the internal control environment, including any significant deficiencies in the design or operation of internal controls that could adversely affect the corporation's ability to record, process, summarize and report financial data, and on any fraud, whether or not material, that involves management or other employees who have a significant role in the corporation's internal controls.

•     Receive periodic presentations from the General Auditor on the review, and related results, of each corporate Executive Committee member's expense account and perquisites, including their use of corporate assets.

•     Review with management the corporation's program for compliance with laws and regulations and review the record of such compliance; and review significant legal cases outstanding against the corporation or its subsidiaries and other regulatory or legal matters that may have a material impact on the corporation's financial statements.

•     Review the program established by management that monitors compliance with the Code of Conduct and review the record of such compliance.

•     Review regulatory authorities' significant examination reports pertaining to the corporation, its subsidiaries and associated companies.

•     Receive communications and presentations from management summarizing the suspicious activity reports filed by subsidiaries with the appropriate regulatory and law enforcement agencies.

•     Review management reports issued by the corporation in accordance with FDICIA and the corresponding independent registered public accounting firm's attestation and agreed-upon procedures reports.

52.    As discussed herein, in addition to violating their fiduciary duties, the Individual Defendants failed to meet their responsibilities. The Individual Defendants' illegal course of conduct constituted breaches of their fiduciary duties to JPMorgan and resulted in significant harm to the Company.

## COUNT I

### (BREACH OF FIDUCIARY DUTY)

53.    Plaintiff incorporates by reference and re-alleges each of the foregoing allegations as though fully set forth herein.

54.    The Individual Defendants owed a fiduciary duty to JPMorgan to supervise the issuance of its press releases and public filings and ensure that they were truthful, accurate and conformed to federal and state securities laws. The Individual Defendants breached their fiduciary duties by failing to properly supervise and monitor the adequacy of JPMorgan's internal controls and by allowing misleading statements and filings to be issued.

17

55.     The Individual Defendants have engaged, knowingly or recklessly, in a sustained and systematic failure to exercise their oversight responsibilities to ensure that JPMorgan complied with federal and state laws, rules and regulations.

56.     As members of the Board, the Individual Defendants were directly responsible for authorizing or permitting the authorization of, or failing to monitor, the practices which resulted in violations of the federal and state laws as alleged herein. Each of them had knowledge of and actively participated in and/or approved of or acquiesced in the wrongdoings alleged herein or abdicated his/her responsibilities with respect to these wrongdoings. The alleged acts of wrongdoing have subjected JPMorgan to unreasonable risks of loss and expenses.

57.     Each of the Individual Defendants' acts in causing or permitting the Company to disseminate to the investing public material misrepresentations and omissions and abdicating their oversight responsibilities to the Company has subjected the Company to liability for violations of federal and state law, and therefore could not be the product of a valid exercise of business judgment.   Instead, this was a complete abdication of their duties as officers and/or directors of the Company. As a result of the Individual Defendants' breaches, JPMorgan has lost market capitalization and has had its reputation in the business community and financial markets irreparably tarnished.

58.     By reason of the foregoing, JPMorgan was significantly damaged.

59.     Plaintiff, on behalf of JPMorgan, has no adequate remedy at law.

## COUNT II

### (UNJUST ENRICHMENT)

60.     Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

18

61.     Through the wrongful course of conduct and actions complained of herein, the Individual Defendants were unjustly enriched at the expense of, and to the detriment of, JPMorgan. The wrongful conduct was continuous and resulted in ongoing harm to the Company. The Individual Defendants were unjustly enriched pursuant to receiving compensation and director remuneration while breaching their fiduciary duties to the Company.

62.     Plaintiff, as a shareholder of JPMorgan, seeks restitution from the Individual Defendants, and seeks an order of this Court disgorging all profits, benefits, and other compensation obtained by the Individual Defendants, from their wrongful course of conduct and fiduciary breaches.

63.     By reason of the foregoing, JPMorgan was damaged.

64.     Plaintiff, on behalf of JPMorgan, has no adequate remedy at law.

## COUNT III

### (GROSS MISMANAGEMENT)

65.     Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

66.     The Individual Defendants had a duty to JPMorgan and its shareholders to prudently supervise, manage and control the operations, business and internal financial accounting and disclosure controls of the Company.

67.     The Individual Defendants, by their actions and be engaging in the wrongdoing described herein, abandoned and abdicated their responsibilities and duties with regard to prudently managing the business of JPMorgan in a manner consistent with the duties imposed upon them by law. By committing the misconduct alleged herein, the Individual Defendants breached their duties of due care, diligence, and candor in the management and administration of JPMorgan's affairs and in the use and preservation of the Company's assets.

68.     During the course of the discharge of their duties, the Individual Defendants knew or recklessly disregarded the unreasonable risks and losses associated with their misconduct, yet the Individual Defendants caused JPMorgan to engage in the scheme complained of herein, which they knew had an unreasonable risk of damage to JPMorgan, thus breaching their duties to the Company. As a result, the Individual Defendants grossly mismanaged JPMorgan.

69.     By reason of the foregoing, JPMorgan was damaged.

70.     Plaintiff, on behalf of JPMorgan, has no adequate remedy at law.

## COUNT IV

### (CONTRIBUTION AND INDEMNFICATION)

71.     Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

72.     JPMorgan is alleged to be liable to various persons, entities and/or classes by virtue of the same facts or circumstances as are alleged herein that give rise to Defendants' liability to JPMorgan.

73.     JPMorgan's alleged liability on account of the wrongful acts, practices and related misconduct described above arises, in whole or in part, from the knowing, reckless, disloyal and/or bad faith acts or omissions of the Individual Defendants as alleged above, and JPMorgan is entitled to contribution and indemnification from each Individual Defendant in connection with all such claims that have been, are or may in the future be asserted against, JPMorgan by virtue of the Individual Defendants' misconduct.

74.     By reason of the foregoing, JPMorgan was damaged.

75.     Plaintiff, on behalf of JPMorgan, has no adequate remedy at law.

## COUNT V

## (WASTE OF CORPORATE ASSETS)

76.     Plaintiff incorporates by reference and realleges each of the foregoing allegations as though fully set forth herein.

77.     As a result of the misconduct described above, and by failing to properly consider the interests of the Company and its public shareholders, Individual Defendants have caused to incur (and JPMorgan may continue to incur) significant legal liability and/or legal costs to defend itself as a result of Defendants' unlawful actions.

78.     As a result of this waste of corporate assets, Individual Defendants are liable to the Company.

79.     By reason of the foregoing, JPMorgan was damaged.

80.     Plaintiff, on behalf of JPMorgan, has no adequate remedy at law.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment as follows:

A.     Determining that this action is a proper derivative action maintainable under law and demand is excused;

B.     Awarding, against all Defendants and in favor of JPMorgan, the damages sustained by the Company as a result of Defendants' breaches of fiduciary duties;

C.     Awarding to JPMorgan restitution from Defendants and ordering disgorgement of all profits, benefits and other compensation obtained by the Defendants;

D.     Directing JPMorgan to take all necessary actions to reform and improve its corporate governance and internal procedures, to comply with the Company's existing governance obligations and all applicable laws and to protect the Company and its shareholders from a recurrence of the damaging events described herein;

E.   Awarding to Plaintiff the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

F.   Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated:   September 6, 2011

POMERANTZ HAUDEK
GROSSMAN & GROSS LLP

By: _____

Marc I. Gross
Jeremy A. Lieberman
Fei-Lu Qian
100 Park Avenue - 26th Floor
New York, New York 10017
Telephone: 212-661-1100
Facsimile: 212-661-8665
migross@pomlaw.com
jalieberman@pomlaw.com

Patrick V. Dahlstrom
**POMERANTZ HAUDEK
  GROSSMAN & GROSS LLP**
Ten South La Salle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile:  (312) 377-1184

***Attorneys for Plaintiff***

22

## VERIFICATION

I, R. Randall Roche, pursuant to U.S. Code Title 28, Section 1746, hereby declare as follows:

I am authorized to make this verification by the plaintiff herein and that the facts and allegations therein contained in the foregoing Verified Shareholder Derivative Complaint are true and correct to the best of my information and belief based upon discussions with and reliance upon my counsel. Plaintiff is a shareholder of JPMorgan Chase & Co. ("JPMorgan"), was a shareholder at the time of the wrongdoing complained of and remains a shareholder. I have retained competent counsel and I am ready, willing and able to pursue this action vigorously on behalf of JPMorgan.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this ____ day of _____ 2011, at _Baton Rouge, Louisiana_

R. Randall Roche, General Counsel
Louisiana Municipal Police Employees
Retirement System